<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARZOUK KHALIFEH,** | |
| *Plaintiff*, | Civil Action No. 16-4572 |
| v. | **OPINION** |
| **DUFF & PHELPS CORPORATION, et al.,** | |
| *Defendants.* | |

     **THIS MATTER** comes before the Court on Defendants Duff & Phelps Corporation and Duff & Phelps, LLC's (collectively, "Defendants") motion to dismiss <u>pro se</u> Plaintiff Marzouk Khalifeh's ("Plaintiff") Complaint.  Dkt. No. 5.  For the reasons set forth below, the motion is **GRANTED** in part and **DENIED** in part.

    **I.**   B<small>ACKGROUND</small>[1]

     The Complaint alleges the following facts, which are taken as true for the purposes of this motion.

     Plaintiff is a Palestinian male.  Compl. at 3, Dkt. No. 1.  He was hired by Duff & Phelps, a financial services firm, in 2009, and held the position of Senior Accountant in its Morristown, New Jersey location.  <u>Id.</u>  Plaintiff alleges that Defendants discriminated against, harassed, retaliated

---

[1] In their briefs, both Plaintiff and Defendants attempt to introduce new facts and exhibits. However, "[i]n considering a motion to dismiss, the district court is . . . bound not to go beyond the facts alleged in the Complaint and the documents on which the claims made therein [are] based."  <u>Bruni v. City of Pittsburgh</u>, 824 F.3d 353, 360 (3d Cir. 2016) (quotation omitted). Therefore, the Court will limit its consideration to the facts provided in the Complaint.  In addition, to the extent Plaintiff's September 19, 2016 filing was intended as a sur-reply, it was filed without permission of the Court and will be disregarded.  <u>Mattern v. City of Sea Isle</u>, 131 F. Supp. 3d 305, 312 (D.N.J. 2015), <u>aff'd</u>, 657 F. App'x 134 (3d Cir. 2016).

against, and constructively terminated him on the basis of his Palestinian heritage and in response to his filing of complaints alleging discrimination. Id. at 2-3.

First, Plaintiff alleges that Defendants failed to promote him because of his Palestinian heritage. Id. at 3. While Plaintiff was not promoted, less qualified, non-Palestinian individuals were promoted several times. Id. at 3-4. Specifically, a Caucasian female employee ("Employee One") received a promotion to senior accountant less than two years after joining the company, and was given another promotion after Plaintiff left. Id. at 4. In addition, a Caucasian and Hispanic female employee ("Employee Two") was promoted twice in March 2012 and March 2013, and to a director position in 2015 after Plaintiff left. Id. Likewise, a Caucasian male employee ("Employee Three") received two promotions in three years in the finance department, and a later promotion to a VP position. Id. And finally, another female employee received two promotions and ultimately became the General Ledger Manager ("General Ledger Manager"), which made her Plaintiff's boss. Id. at 3. At the time, Plaintiff held a CPA license, MBA degree, more than 10 years of finance and accounting experience, and had received excellent reviews each year. Id. at 4.

Second, when Plaintiff complained about Defendants' "suspicious promotion practices," they retaliated against him. Plaintiff first questioned Defendants' promotion practices in a March 2, 2013 email to the VP of Human Resources, CFO, and Accounting Controller ("Controller"). Id. at 3. He also challenged the practices in an August 13, 2013 email to the Controller and Assistant Controller. Id.

Instead of addressing Plaintiff's concerns, the Controller allegedly told him to "put [his] head down," stop the complaints, and apologize for the email he had sent. Id. The Controller told Plaintiff that this is what he needed to do to keep his job. Id. Plaintiff sent the requested apology

email.  Id.  The Human Resources manager later told Plaintiff that she did not care about the email he wrote to her, and that he could not imply that high-ranking members of the finance department had engaged in inappropriate actions.  Id.  She further conveyed to Plaintiff that if he did not have adequate evidence against his supervisors, they could take disciplinary action against him.  Id.  Additionally, Plaintiff was warned in a performance review to refrain from documenting any incidents in writing.  Id. at 4.

Plaintiff suffered additional retaliation due to his complaints.  He was purposely "forgotten" for a performance review, given declining performance ratings, and not given appropriate pay increases and bonuses.  Id.  Plaintiff was also constantly treated with hostility by the General Ledger Manager, to the extent that he had a breakdown in the bathroom on the evening of the company's holiday party in December 2013.  Id.  Additionally, he Plaintiff was harassed by the Controller and General Ledger Manager about taking paternity leave, and was asked to cut it short and take vacation time first, despite the fact that other employees had taken full advantage of the company's paternity leave policy.  Id.  And finally, as explained below, Plaintiff contends that he was constructively terminated in retaliation for his complaints.  Id.

Third, Plaintiff was harassed and subjected to a hostile work environment.  In addition to the aforementioned incidents, Plaintiff observed other inappropriate acts by company employees and supervisors.  In particular, the General Ledger Manager regularly engaged in inappropriate and unprofessional behavior and harassed numerous employees.  Id. at 3.  This included spreading rumors about the payroll manager and calling her a "hooker," and calling an accounting associate a "pedophile."  Id.  This harassment was reported to Human Resources, but the General Ledger Manager was never reprimanded.  Id.

Finally, Plaintiff alleges that he was forced to resign because the combination of

3

discrimination, retaliation, and harassment created an unbearable working environment.  Id. at 4-5.  It is unclear from the Complaint when Plaintiff resigned from his position.

On June 23, 2016, Plaintiff filed a Complaint in the Superior Court of New Jersey, Law Division, Morris County.  On July 28, 2016, Defendants removed the case to this Court, on the basis of diversity jurisdiction.  See Notice of Removal, Dkt. No. 1.  The Complaint levies claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, et seq.  Specifically, Plaintiff asserts claims of: (1) discriminatory failure to promote; (2) retaliation; (3) harassment/hostile work environment; and (4) constructive discharge.

On August 18, 2016, Defendants filed the instant motion to dismiss.  Defendants seek to dismiss all four claims, arguing that Plaintiff failed to exhaust administrative remedies for his Title VII claims, that his NJLAD claims are untimely under the relevant statute of limitations, and that his remaining allegations fail to state a claim.

## II.  LEGAL STANDARD

In considering a motion to dismiss, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party.  Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  Id. at 231.  However, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Therefore, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In addition, where the Plaintiff is proceeding pro se, the Court construes the pleadings liberally and holds them to a less stringent standard than those filed by attorneys. Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009) (citing Haines v. Kemer, 404 U.S. 519, 520-21 (1972)).

### III. ANALYSIS

#### A. Title VII Claims

Defendants argue that Plaintiff's Title VII claims should be dismissed with prejudice because Plaintiff failed to demonstrate that he exhausted his administrative remedies. The Court agrees.

Failure to exhaust administrative remedies is a defense that may be raised on a motion to dismiss. Anjelino v. N.Y. Times Co., 200 F.3d 73, 87 (3d Cir. 1999). Indeed, "[a] complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the [Equal Employment Opportunity Commission ("EEOC")] for conciliation or resolution." Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997) (quotation omitted).

To properly exhaust administrative remedies under Title VII, a plaintiff must file a charge with the EEOC within 180 days after the alleged unlawful conduct occurred. 42 U.S.C.A. § 2000e-5(e)(1). If the plaintiff lives in a deferral state, such as New Jersey, and a charge is also filed with a state or local agency, this deadline is extended to 300 days. Id.; see also Cardenas v. Massey, 269 F.3d 251, 255 n.2 (3d Cir. 2001). Once a charge is filed with the EEOC, it has 180 days to investigate the allegations and notify the employee of its conclusions. 42 U.S.C. § 2000e–5(f)(1). If the EEOC does not respond within 180 days, or issues a "right-to-sue" letter to the employee before the 180 days has expired, the employee has 90 days to file a lawsuit. Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001).

The Complaint proffers no facts demonstrating that Plaintiff complied with the administrative requirements prior to filing his lawsuit.  In fact, Plaintiff concedes in his opposition that he was not able to file a complaint with the EEOC during the limitation period.  See Opp'n at 12.  Although Plaintiff is proceeding pro se and the exhaustion requirements are "to be interpreted in a nontechnical fashion, the aggrieved party is not permitted to bypass the administrative process."  Webb v. City of Philadelphia, 562 F.3d 256, 262–63 (3d Cir. 2009) (quotation omitted).  While the Court would usually dismiss without prejudice to provide Plaintiff with an opportunity to demonstrate satisfaction of the exhaustion requirements, his brief expressly concedes that he never filed a complaint with the EEOC.  Therefore, the Court must dismiss Plaintiff's Title VII claims with prejudice.

**B. NJLAD Claims**

i. Statute of Limitations

Defendants argue that Plaintiff's claims under the NJLAD are untimely.  The Court agrees with respect to two of Plaintiff's claims.

As the statute of limitations is an affirmative defense, it "must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002).  Nevertheless, the Third Circuit "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  Id. (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).  In other words, for a Court to grant a motion to dismiss based on the statute of limitations, it must be clear from the face of the Complaint that Plaintiff's claims are time-barred.

The NJLAD has a two-year statute of limitations.  Rodriguez v. Raymours Furniture Co.,

225 N.J. 343, 362 (2016).  "Generally stated, discrete acts of discrimination, such as termination or a punitive retaliatory act, are usually readily known when they occur and thus easily identified in respect of timing.  Hence, their treatment for timeliness purposes is straightforward: 'A discrete retaliatory or discriminatory act occurs on the day that it happens.'"  <u>Alexander v. Seton Hall Univ.</u>, 204 N.J. 219, 228 (2010) (quoting <u>Roa v. Roa</u>, 200 N.J. 555, 567 (2010)).  Discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire."  <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 114 (2002).

Plaintiff filed the Complaint on June 23, 2016.  Therefore, the limitations period accrued on June 23, 2014.  The Complaint points to numerous alleged discriminatory and retaliatory acts.  However, only two of the alleged acts feature a date: (1) Employee Two's promotions in March 2012 and March 2013; and (2) Plaintiff's "treat[ment] with hostility" that led to his having "a breakdown on the evening of the company's holiday party" in December 2013.  It is evident from the Complaint that any claims resting solely upon Employee Two's promotions or the events in December 2013 are outside of the statute of limitations.[2]  Accordingly, Plaintiff's allegations of discrimination, retaliation, and harassment premised solely on Employee Two's promotions or the events of December 2013 are dismissed without prejudice as time-barred.[3]

Because the Court is unable to determine whether Plaintiff's remaining allegations are time-barred from the face of the Complaint, dismissal is inappropriate at this early procedural stage.  <u>See, e.g.</u>, <u>United States v. Balice</u>, No. 11-130, 2011 WL 3485438, at *2 (D.N.J. July 21,

---

[2] The Court notes that while any claims resting solely on these alleged discrete discriminatory acts are time-barred, such acts may still be relevant to at least Plaintiff's hostile work environment claim.  <u>See</u> <u>Mandel v. M & Q Packaging Corp.</u>, 706 F.3d 157, 165 (3d Cir. 2013); <u>Green v. Brennan</u>, 136 S. Ct. 1769, 1781 n.7 (2016).

[3] These claims are dismissed without prejudice, insofar as Plaintiff may attempt to articulate an appropriate basis for tolling the statute of limitations.

2011) (denying a motion to dismiss where it could not be determined whether plaintiff's allegations were time-barred from the face of the complaint).

               ii. Failure to State a Claim

Defendants argue that Plaintiff's remaining NJLAD claims must be dismissed because they fail to state a claim.  The Court agrees with respect to Plaintiff's failure to promote claim, but disagrees for his retaliation, hostile work environment, and constructive discharge claims.

               1.  Discriminatory Failure to Promote

Defendants argue that Plaintiff has not alleged sufficient facts to sustain a claim for discriminatory failure to promote under the NJLAD.  The Court agrees.

To state a prima facie case of discriminatory failure to promote under the NJLAD, a plaintiff must allege: "(1) that []he is a member of a class protected by the anti-discrimination law; (2) that []he was qualified for the position or rank sought; (3) that []he was denied promotion, reappointment, or tenure; and (4) that others . . . with similar or lesser qualifications achieved the rank or position."  Dixon v. Rutgers, The State Univ. of New Jersey, 110 N.J. 432, 443 (1988).

The Complaint fails to state a claim for discriminatory failure to promote.  As Defendants note, the Complaint does not identify: any specific promotion or position that Plaintiff sought but was denied based on his membership in a protected class, the requirements of any such position, Plaintiff's own qualifications in relation to any such position, the qualifications of any other employee that received a promotion instead of Plaintiff, or any other facts describing the circumstances of such discrimination.  The failure to plead any of these facts is fatal to Plaintiff's failure to promote claim.  See, e.g., Ayala v. New Jersey Dep't of Law & Pub. Safety, Div. of State Police, No. A-6125-09T1, 2011 WL 5041913, at *4 (N.J. Super. Ct. App. Div. Oct. 25, 2011) (affirming the trial judge's grant of a motion to dismiss because the complaint was "bereft of any

specifics with regard to each plaintiff's application for promotion; his qualifications; the dates of the rejection; whether the sought after position was filled and, if so, by whom; and, if there was a successful candidate, the successful candidate's qualifications").

For these reasons, Defendants' motion to dismiss is granted and Plaintiff's failure to promote claim is dismissed without prejudice.  Plaintiff may amend the Complaint to provide additional details regarding any alleged discriminatory failure to promote.

### 2.  Retaliation

Defendants argue that Plaintiff cannot make out a claim for retaliation under the NJLAD because he fails to identify any protected activity that he engaged in, or any sufficient subsequent retaliatory conduct.  The Court disagrees.

The NJLAD makes it unlawful "[f]or any person to take reprisal against any person because that person has opposed any practice or acts forbidden under this act."  N.J.S.A. 10:5–12(d).  To maintain a claim for retaliation, a plaintiff must plead that he "'engaged in a protected activity known to the [employer,]' the employee was 'subjected to an adverse employment decision[,]' and there is a causal link between the protected activity and the adverse employment action."  Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013) (quoting Woods–Pirozzi v. Nabisco Foods, 290 N.J. Super. 252, 274 (App. Div. 1996)).  The plaintiff must also "demonstrate that the original complaint was both reasonable and made in good faith."  Id. at 546 (citing Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 373 (2007)).

First, Plaintiff adequately pleads that he engaged in a protected activity.  An employee "engages in protected activity under the NJLAD when that person opposes any practice rendered unlawful under the LAD."  Young v. Hobart W. Grp., 385 N.J. Super. 448, 466 (App. Div. 2005); see also N.J.S.A. § 10:5-12(d).  New Jersey courts have defined "opposition" broadly: "'to resist

or antagonize . . .; to contend against; to confront; resist; withstand[;] . . . to be hostile or adverse to, as in opinion.'"  LaFranco v. Avaya Inc., No. A-1666-06T2, 2009 WL 2850747, at *8 (N.J. Super. Ct. App. Div. Sept. 8, 2009) (quoting Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn., 555 U.S. 271, 276 (2009)).  Here, the Complaint states that Plaintiff "questioned and challenged the finance department['s] suspicious promotion practices" through at least two emails to a number of supervisors, and discussed the issue in subsequent conversations with supervisors and Human Resources personnel.  Compl. at 3-4.  Lodging complaints about discriminatory promotion practices to supervisors and Human Resources is clearly a protected activity, and discriminatory promotion practices are unquestionably prohibited under the NJLAD.  Moreover, there is no question that Defendants were on notice of Plaintiff's grievances—the Complaint specifically alleges that at least one of his supervisors told him to stop making complaints and "put his head down," and further states that the Human Resources director warned him that if he did not stop filing complaints, adverse action could be taken against him.  Id. at 3-4.

Second, Plaintiff has satisfactorily pleaded that he suffered adverse employment action following his engagement in protected activity.  To meet this prong, a plaintiff must show that a reasonable employee would have found the alleged employment action materially adverse, which means it "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Roa, 200 N.J. at 575 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 54 (2006)).  Here, the Complaint identifies at least two employment actions that could have dissuaded a reasonable employee from supporting a charge of discrimination.  First, Plaintiff claims that after he complained to his supervisors regarding discriminatory promotion practices, he was threatened by both a supervisor and Human Resources manager and told that he could face adverse consequences if he continued making complaints.  Even if they are not carried out, threats

may constitute adverse employment action.  <u>See, e.g.</u>, <u>Shnaidman v. State, Dep't of Human Servs.,</u>

<u>Div. of Mental Health Servs.</u>, No. A-4120-11T4, 2013 WL 1776098, at *10-12 (N.J. Super. Ct.

App. Div. Apr. 26, 2013).  In addition, Plaintiff's claim that he was constructively terminated due

to the harassment he faced may constitute an adverse employment action.  <u>See, e.g.</u>, <u>Lovett v.</u>

<u>Flemington-Raritan Reg'l Bd. of Educ.</u>, No. A-0991-12T1, 2013 WL 5925615, at *6 (N.J. Super.

Ct. App. Div. Nov. 6, 2013).[4]

 Therefore, Defendants' motion to dismiss Plaintiff's retaliation claim is denied.

3. Harassment/Hostile Work Environment

 Defendants argue that Plaintiff has not alleged sufficient facts to sustain a claim for

discriminatory harassment or hostile work environment under the NJLAD.  The Court disagrees.

 To state a claim for hostile work environment, a plaintiff must show that the complained

of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe

or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment

have been altered and that the working environment is hostile or abusive.  <u>Lehmann v. Toys R Us,</u>

<u>Inc.</u>, 132 N.J. 587, 603–04 (1993).  "A hostile work environment exists when a workplace is

permeated with discriminatory intimidation, ridicule and insult so severe or pervasive as to alter

the conditions of the victim's employment and create an abusive working environment."  <u>Cortes</u>

<u>v. Univ. of Med. & Dentistry of New Jersey</u>, 391 F. Supp. 2d 298, 308 (D.N.J. 2005).  To assess

a hostile work environment claim, the Court looks at "all the circumstances," including "the

---

[4] Plaintiff's declining performance reviews may also qualify as adverse employment actions. While it is true, as Defendants note, that performance reviews (even negative ones) are often not found to be adverse employment actions, if Plaintiff can demonstrate that Defendants gave him lower performance ratings *specifically because* he engaged in protected activity, and/or that such performance reviews had a negative impact on his opportunities for promotion or compensation, such action could arguably dissuade a reasonable person from engaging in protected activity.

11

frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Green v. Jersey City Bd. of Educ.</u>, 177 N.J. 434, 447 (2003). Under the NJLAD, even a "single incident, if sufficiently severe, can create a hostile environment." <u>Taylor v. Metzger</u>, 152 N.J. 490, 500 (1998).

Taking the allegations in the Complaint as true for the purposes of this motion, Plaintiff states a hostile work environment claim. Although Defendants argue that Plaintiff's allegations primarily pertain to conduct directed at other employees and that his only relevant allegation is a single instance of name-calling, <u>see</u> Def.'s Br. at 7-8, the Complaint makes numerous other allegations. Among other things, the Complaint alleges that because of his Palestinian heritage, Plaintiff was neglected for promotion in favor of less qualified Caucasian employees; he was "constantly treated with hostility" by a supervisor, which led to his having "a breakdown on the evening of the company's holiday party" and caused him not to attend the party; his supervisor "made fun of [his] Palestinian name and accent" and questioned whether he had fought against Israel as a member of the Palestinian Army; he was "harassed" by two supervisors about taking paternity leave and was asked to cut it short and take vacation time first, despite the fact that other employees had taken full advantage of their paternity leave; his complaints regarding discrimination were not acted upon; he was told not to document any incidents in writing; he was told by a supervisor to stop filing complaints and "put [his] head down"; he was warned that he could not imply that high-ranking members of the finance department had engaged in inappropriate actions, or they could take disciplinary action against him; he was given a delayed performance review; he was given declining performance ratings; he was not given appropriate pay increases and bonuses; and the harassment ultimately forced him to leave the company. Compl. at 3-5.

Considering the early procedural posture of this case, and construing the allegations in the Complaint liberally because Plaintiff is proceeding pro se, the Court will not dismiss his claim for hostile work environment at this time.  See, e.g., Garrett v. U.S. Dep't of Veterans Affairs, No. 05-1164, 2007 WL 1875535, at *7 (D.N.J. June 28, 2007) (noting that "Courts have been hesitant to dismiss hostile work environment claims under Rule 12(b)(6) because the proof of this claim is highly fact-specific"); Stallone v. Camden Cty. Tech. Sch. Bd. of Educ., No. 12-7356, 2013 WL 5178728, at *4-5 (D.N.J. Sept. 13, 2013) (denying a motion to dismiss based on a combination of allegations regarding sexual harassment and other allegations of mistreatment).

Accordingly, Defendants' motion to dismiss Plaintiff's hostile work environment claim is denied.

### 4.  Constructive Discharge

Defendants argue that Plaintiff has not alleged sufficient facts to sustain a claim that his working conditions were "so intolerable" that he was constructively discharged.   The Court disagrees.

To state a claim for constructive discharge, a plaintiff must plead that (1) he was subject to discriminatory employment conditions based upon his membership in a protected category, and (2) that the conditions of employment were "so intolerable that a reasonable person would be forced to resign rather than continue to endure it."  Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 28 (2002) (citing Jones v. Aluminum Shapes, Inc., 339 N.J. Super. 412, 428 (App. Div. 2001)).   "The conduct must be so severe that it invokes a sense of outrage, coercion or unconscionability."  Halpern v. Twp. of Irvington, No. A-3776-14T4, 2016 WL 6543638, at *5 (N.J. Super. Ct. App. Div. Nov. 4, 2016) (citing Jones, 339 N.J. Super. at 428).  In this way, "a constructive discharge claim requires more egregious conduct than that sufficient for a hostile

work environment claim." Shepherd, 174 N.J. at 28.  To determine whether an employee was constructively discharged, courts generally consider "the nature of the harassment, the closeness of the working relationship between the harasser and the victim, whether the employee resorted to internal grievance procedures, the responsiveness of the employer to the employee's complaints, and all other relevant circumstances."  Id. (quotation omitted).

Taking the allegations in the Complaint as true, and for the same reasons as Plaintiff's hostile work environment claim,[5] the Complaint states a prima facie claim for constructive termination.  See, e.g., Niehoff v. SPS Techs., Inc., No. 16-3301, 2016 WL 6648618, at *5 (E.D. Pa. Nov. 10, 2016) (noting that "[i]t is not appropriate for the court to delve into such a 'fact-intensive question' [of whether the working conditions were so intolerable that a reasonable position would have felt compelled to resign] on a motion to dismiss under Rule 12(b)(6)") (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 232-33 n.7 (3d Cir. 2006)); Muench v. Twp. of Haddon, 255 N.J. Super. 288, 302 (App. Div. 1992) (noting that "constructive discharge is a heavily fact-driven determination," and reversing the trial court's grant of a motion to dismiss because "reasonable minds could differ" as to whether a reasonable person would resign under the circumstances) (quotation omitted).   Therefore, Defendants' motion to dismiss Plaintiff's constructive discharge claim is denied.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.  An appropriate Order accompanies this Opinion.

---

[5] Defendants argue that Plaintiff's resignation email demonstrates that he left on his own accord, rather than due to a constructive discharge.  See Reply at 9.  Even if the Court were to consider this evidence, such a factual contention is more appropriately considered on a motion for summary judgment.

_/s Madeline Cox Arleo_____
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**